BRIGGS & TURIVAS *v.* ADJUSTABLE TABLE CO.

1. TRIAL—SALES—REJECTION—INSTRUCTIONS—REQUESTED INSTRUCTIONS.

In an action for the purchase price of steel, where the defense was that the steel was rejected because not according to contract, requested instructions as to defendant's right to reject, and as to what was necessary to be done in order to reject, *held*, covered in substance by the instructions as given.

2. SAME—CONTRACTS—SALES—REJECTION—INSTRUCTIONS.

Where the jury must have clearly understood from the charge as given that if the steel was not in accordance with the contract defendant had a right to reject it, and if it did reject it and so notified plaintiff, then it was not bound to pay for it, there was no error in refusing requests to charge to the same effect.

3. SAME—BEST EVIDENCE—WRITTEN ORDERS—INSTRUCTIONS.

Where defendant claimed damages because of plaintiff's failure to deliver to it steel of the quality ordered, and claimed to have written orders which it was unable to fill, its failure to produce the written orders in evidence justified the trial judge in refusing to submit the question to the jury, since the orders themselves would have been the best proof and they should have been introduced.

4. APPEAL AND ERROR—STATEMENT OF COURT—EXCEPTIONS—SAVING QUESTION FOR REVIEW.

Where the trial judge, in colloquy with counsel for defendant, made a statement the purport of which is not clear to this court, but to which no exception was taken and no effort made to correct it, counsel is in no position to complain of it on error.

Error to Kent; Mayne (Frederick W.), J., presiding. Submitted January 27, 1922. (Docket No. 98.) Decided July 20, 1922. Rehearing denied November 2, 1922.

Assumpsit by Briggs & Turivas against the Ad-

justable Table Company for goods sold and delivered. Judgment for plaintiff.    Defendant brings error. Affirmed.

*Travis, Merrick, Warner & Johnson,* for appellant.

*Howard A. Ellis* and *Leo L. Weil,* for appellee.

BIRD, J.    Plaintiff is a broker and jobber of iron and steel products with its principal office in Chicago. Defendant is a manufacturing corporation located at Grand Rapids.    Plaintiff brought this suit to recover a balance claimed to be due it on certain consignments of steel shipped to defendant in 1920.    The controversy involves 4 cars of steel, car No. 1 was ordered in March, 1920, No. 2 in April and Nos. 3 and 4 in May.    The defense was that the steel in cars 1, 2 and 3 was not of the quality ordered and could not be used in its business and, therefore, it refused to accept them.    Plaintiff prevailed.

Car No. 1.    Car No. 1 was sent forward to Grand Rapids with draft attached to bill of lading.    The draft was paid before the car was received and inspected.    The claim is that when inspected it was found that the sheets of steel were buckled and warped and thereby rendered unfit for its use.    Defendant claimed that it advised plaintiff of the defects and that it would not be accepted.    The question as to whether the defendant rescinded the sale was submitted to the jury.    In connection with the submission defendant proffered certain requests which it claims were not given, and that the failure to give them was error. One of the requests is as follows:

"The jury is instructed that if you find that the steel in car No. 1 was not according to contract and that the defendant, after an inspection which was made within a reasonable time after receiving the car, refused to keep the steel, and within a reasonable time thereafter so notified the plaintiff and offered to return

within a reasonable time said steel to the plaintiff, then I instruct you that the plaintiff is liable to defendant for the amount which defendant paid for on account of said car of steel, which the undisputed evidence shows amount to $7,050.44."

Another was:

"That all that was necessary for the defendant to do was to offer to return the car, said defendant not being bound to actually return the car to plaintiff."

These two requests cover the substance of other requests made along the same line. The trial court, in disposing of this phase of the case, instructed the jury:

"Now, as to the quality of the steel. Each order determines that. Order for car No. 1 which was given April 14, 1920; delivered June 3d; paid for May 27, 1920, was for one pass, cold rolled, box annealed steel, prime sheets. To meet the requirements of that order, the sheets must be what is known as prime sheets. That is descriptive of the quality. Now, one question for you to determine is this: Did it come within the terms of the contract? If not, did the defendant in this case reject it within the time provided in the contract, to-wit, ten days? Payment was made; that is one of the things that you must take into consideration. If this car was rejected within a reasonable time, to be determined from all the facts and circumstances of the case, payment having been made, if this car was rejected and the plaintiff notified within a reasonable time, then the defendant would be, under its pleadings, entitled to recover back this money, plus the interest at five per cent. If this car was not rejected by the defendant and notice given to the plaintiff within a reasonable time, then the defendant is liable for the purchase price, whether the quality was the same as ordered or not. It was furnished by the plaintiff to the defendant as being of that quality. The duty then was upon the defendant to examine and determine whether it came within the specifications, and it had a reasonable time in which to do so; and if the defendant did not reject

it and so notify the plaintiff within a reasonable time, it cannot now come in and recover back this money.

"So that the point for you to determine in this case is, *first:* Did it come within the terms of the contract? If you should find that it did, that is the end of the case; it is already paid for, and there is nothing further for consideration. If the quality of the steel was not as provided in the order then you will further determine whether the defendant rejected it within a reasonable time and so notified the plaintiff. If you find the quality was not up to standard, it is entitled to reject it, and would be entitled to recover back the money which it had paid."

We think the charge of the court fairly covered the substance of the requests. The important thing for the jury to understand was that if the steel was not in accord with the contract, the defendant had a right to refuse its acceptance and recover back what it had paid thereon.

Car No. 2. This car was refused because the steel was defective. It is claimed that the steel was so badly pitted that it could not be used in the manufacture of its product. This car was inspected before it was paid for and rejected because it did not measure up to the contract. Defendant asked the court to give the following instruction as to this car:

"If you find that the steel in car No. 2 was not substantially as ordered, then defendant had a right to refuse to keep the steel and if you find that defendant so notified plaintiff within a reasonable time I charge you that plaintiff is not entitled to recover any amount on car No. 2, but defendant is entitled to recover the sum of $157.88, the amount defendant paid for freight on car number 2."

Other requests were proffered along the same line. The trial court charged the jury as to car No. 2, as follows:

"The defendant claims that the steel was not up to the contract, that it was defective, and considerable

testimony has been presented relative to the character and quality of the steel furnished.

"Car No. 1 was for one pass, cold rolled, box annealed steel, prime sheets. Car No. 2, the quality of which is criticized and in question, was for one pass, cold rolled, box annealed steel; not specified as prime sheets.

"Plaintiff claims that it furnished this steel according to the terms of the contract, and that it was the duty of the defendant to accept it; that is, they were first to examine it, inspect it, and within a reasonable time to reject it, and that if they did not reject it within a reasonable time then they are responsible for the purchase price. The defendant claims they did reject it and so notified the plaintiff.

"Contract Nos. 2 and 4 was for ten days net. Under the statute governing in this case, it became the duty of the defendant, within a reasonable time after the cars arrived in his yards, to examine the same and to reject it, provided it was going to reject it, and so notify the plaintiff of the fact. The duty of examining and rejecting is upon the defendant, and it must notify the plaintiff of the fact; otherwise it will be held to have accepted it and cannot offset any claim by reason of defective quality.

"As to car No. 2 it does not call for 'prime' steel. I charge you that under the testimony in this case they would not be required to furnish prime sheets of steel, if it was not specified in the contract. They would be obliged to furnish one pass, cold steel properly rolled, and box annealed; that is, once rolled; one pass means once rolled, properly rolled, box annealed. It must be a fair quality; in other words it must be merchantable. * * * It has to be of merchantable quality once properly rolled, and of fair grade. I think you could properly class that as merchantable quality."

In referring to the freight charges which defendant paid on car No. 2 the court said to the jury:

"The defendant claims that it is entitled to have returned on car No. 1 the price paid, $7,050.44, and that it is entitled to receive also the sum of $157.88

freight that it paid on car No. 2, or a total of $7,208.32."

We think the jury clearly understood by this charge that if the steel was not in accordance with the contract the defendant had a right to reject it, and if it did reject it and notified the plaintiff then it was not bound to pay for it.

Car Number 3.   Car No. 3 was rejected because the steel was defective.   The attention of plaintiff was called to it, and, upon inspection, it conceded that car No. 3 was not in accordance with the contract and no claim is made in this suit for that car.   Defendant, however, claims damages for plaintiff's failure to deliver a car of suitable steel at this time.   That it is entitled to recover the profit on 1,750 adding machine tables, which it had contracted to deliver to the Burroughs Adding Machine Company.   It was claimed by Mr. Hendricks, the president of defendant, that defendant had orders for 1,750 adding machine stands, and that by reason of plaintiff's failure to deliver to it steel of the quality provided in the contract at the time agreed, these orders were canceled.   There is some argument by counsel as to whether damages of this character were too speculative to permit of a recovery, but the main contention of plaintiff is that the proofs do not show that it had any such orders.   The trial court evidently took this view of it and refused to submit it to the jury.   After Mr. Hendricks testified that his company was unable to make 1,750 adding machine stands, which they had already sold, counsel for plaintiff objected on the ground that the orders would be the best evidence, and insisted that they should produce the contracts.   Later, upon cross-examination, Mr. Hendricks testified:

"Q. Now, car No. 3—have you the contract with the Burroughs Adding Machine Company?

"A. I have some of their orders here somewhere.

"*Q.* May I see it, please?

"*Mr. Weil:* Have you got the contract?

"*Mr. Johnson:* No.

"*A.* If I have got it, there, they are there; maybe in my overcoat pocket. I do not think we have it in the file. I have got them, I believe, in my overcoat."

It appeared that the orders of the Burroughs Adding Machine Company were in writing. If defendant desired to recover upon this phase of the case it should have made the best proof of the orders by introducing them in evidence. This was not done. Therefore, we think that defendant was not entitled to any consideration upon that phase of the case.

Car No. 4. Certain claims for damages were made by defendant with reference to this car but before the trial was over it withdrew them and made no claims of recoupment on account of the steel being defective. It accepted this car and acknowledged that it was indebted to plaintiff for it.

At the close of the charge the court inquired of counsel if he had stated the law so as to enable the jury to apply it to the testimony of the case. Mr. Ellis, counsel for plaintiff, announced himself satisfied and then the following colloquy took place between the court and defendant's counsel:

"*The Court:* Did I state it sufficiently?

"*Mr. Johnson:* Verbal objections, or verbal conversations—

"*The Court:* That is part of the testimony, and they should take all the testimony. I intended to cover all verbal testimony as well as written. There is no difference as to the value of testimony; it is the testimony you believe in the case.

"*Mr. Johnson:* What I mean is that a verbal rescission of a contract is just as effective as a rescission made in writing. We would not be bound to ship those cars back.

"*The Court:* No; they were sent here, but you do not notify them of the rejection.

"*Mr. Johnson:* The jury should be told that a verbal rescission is as good in law as one made in writing."

Counsel now complain of the last answer of the court and claim it was error for the court to state that: "No, they were sent here, but you do not notify them of the rejection." It is not just clear to this court what was meant by the statement, whether the court misspoke himself or was interrupted before he finished what was in his mind, or whether he meant to say that plaintiff was not notified in writing, does not appear. The court could not have intended to say that there was no proof that defendant did not notify the plaintiff that it would not accept the cars because he had just finished putting the question to the jury on that theory. Counsel took no exception to the statement of the court and made no effort to correct it. Not having done so we think they are in no position to complain of it.

We have examined the remaining assignments of error, but find nothing which should reverse the case. While the court might have charged many other propositions of law applicable to the case he submitted to the jury the material issues and the law applicable thereto. The trial appears to have been a fair one, and the judgment must be affirmed.

FELLOWS, C. J., and WIEST, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.